**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA,
SOUTHERN DIVISION**

| | |
|---|---|
| **ROGER WEBB,** | ) |
| | ) |
|     **Plaintiff** | ) |
| | ) |
| **v.** | )  **CASE NO:**_____ |
| | ) |
| **LIFE INSURANCE COMPANY** | ) |
| **OF NORTH AMERICA,** | ) |
| | ) |
|     **Defendant.** | ) |

## COMPLAINT

Comes now the Plaintiff, Roger Webb, and hereby files his Complaint against Life Insurance Company of North America.

## PARTIES

1.      The Plaintiff, Roger Webb ("Mr. Webb"), is an insured under Group Long Term Disability Plan for employees of Consolidated Nuclear Security identified as Group Insurance Policy LK-0980261 ("the Plan"), who has been improperly denied disability benefits under the Plan.

2.      Defendant, Life Insurance Company of North America ("LINA"), is the Administrator of the Plan. Upon information and belief, LINA is a foreign corporation incorporated in the Commonwealth of Pennsylvania, which conducts business generally in the State of Alabama and specifically within this District.

1

## JURISDICTION AND VENUE

3.     This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.  Plaintiff asserts claims for long term disability ("LTD") benefits, enforcement of ERISA rights and statutory violations of ERISA under 29 U.S.C. § 1132, specifically, Mr. Webb brings this action to recover benefits due to him pursuant to 29 U.S.C. §1132(a)(1)(B) and to enforce his rights under the Plan pursuant to 29 U.S.C. §1132(a)(3).   This Court has subject matter jurisdiction under ERISA without respect to the amount in controversy or the citizenship of the parties.  29 U.S.C. §§ 1132(a), (e)(1) and (f) and 28 U.S.C. § 1131. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b).

## INTRODUCTION

4.     The Plaintiff in this case was subjected to improper claim handling procedures by LINA as it exploited the shortcomings of ERISA as it relates to claims for "welfare" benefits to avoid paying Mr. Webb's valid claim for disability benefits. The traditionally held purpose of the ERISA statute is "to promote the interest of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983). Mr. Webb, as an employee insured for disability, was supposed to be treated as a beneficiary by LINA as a statutory fiduciary. Instead, LINA has breached those duties and victimized Mr. Webb by engaging in improper

claim handling procedures. As described in more detail below, LINA has clearly engaged in bad faith claim handling and Mr. Webb, at minimum, is entitled to *de novo* review and all relief that ERISA provides.

## STATEMENT OF FACTS

5.    Mr. Webb is an insured for benefits under the Plan. LINA is the administrator of the Plan. The Plan provides insureds, like Mr. Webb, LTD benefits and was in full force and effect at all times relevant to this Complaint.

6.    At all relevant times, Mr. Webb was employed by Consolidated Nuclear Security and was a covered participant in the Plan, as defined in 29 U.S.C. § 1002(7) and under the terms and conditions of the Plan.

7.    Mr. Webb, a man sixty (60) years of age, worked at Consolidated Nuclear Security until his disabilities forced him to stop working on or about November 10, 2016.

8.    Mr. Webb was employed by Consolidated Nuclear Security as an Iron Worker Rigger, whose job duties required moving extremely heavy equipment and construction materials; setting up rigs, hoisting structures, or equipment; using heavy machinery to lift heavy loads; loading and properly securing objects on transport equipment; fabricating, erecting, and assembling structural steel; and working with mobile and fixed cranes. This entailed "strenuous physical exertion and activities associated with material or equipment movement," and required skills such as

3

computation, analyzation, communication, comprehension, verbal and visual memory, working memory, attention and concentration, and leadership. Environmental requirements included exposure to confined spaces and Beryllium necessitating the use of a respirator.

9.      Mr. Webb's medical disabilities include rotator cuff tear, chronic bilateral shoulder pain, posttraumatic stress disorder, anxiety, depression, panic attacks, history of heat stroke with residual chronic headaches, Beryllium exposure, multiple lung nodules, and obstructive sleep apnea. The symptoms of his impairments and the side effects of the medications and treatment prescribed render Mr. Webb unable to perform any job.

10.      Dr. Ron Brown provided a Behavioral Health Provider's Statement of Work Capacity and Impairment on December 1, 2016 which noted diagnoses of posttraumatic stress disorder, generalized anxiety, and major depressive disorder. Dr. Brown noted that he considered Mr. Webb to be totally impaired.

11.      On January 5, 2017, Dr. Hurst completed a Behavioral Health Clinician's Statement in which he noted that, due to anxiety and panic attacks, he anticipated permanent work restrictions.

12.      To address his right shoulder rotator cuff tears and degenerative labral tears, Mr. Webb underwent arthroscopic subacromial decompression and extensive debridement of these tears on March 27, 2017.

13.     Mr. Webb was approved for and began receiving LTD benefits from LINA as of May 17, 2017.

14.     Mr. Webb received continuous LTD benefits from May 17, 2017 through September 18, 2018, totaling sixteen (16) months of continuous benefits.

15.     Mr. Webb's LTD benefits were approved and paid from May 17, 2017 through September 18, 2018 because LINA determined that he was unable to perform the material duties of his regular occupation, as defined under the Plan.

16.     By letter dated September 18, 2018, LINA wrongfully terminated Mr. Webb's LTD benefits.

17.     The Plan at issue, as governed by ERISA and relied upon to deny Mr. Webb's LTD benefits states, in part:

> The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
>
> 1. unable to perform the material duties of his or her Regular Occupation; and
> 2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.
>
> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness,

5

he or she is:

1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training, or experience; and

2. unable to earn 60% or more of his or her Indexed Earnings.

18. Using this test of disability, LINA found Mr. Webb disabled and approved his LTD benefits for sixteen (16) months as Mr. Webb's chronic shoulder pain, posttraumatic stress disorder, anxiety disorder, and panic attacks prevented him from performing the essential duties of his occupation.

19. In coming to the decision to terminate Mr. Webb's benefits, LINA relied upon paid reviewers to consider Mr. Webb's medical records and whether Mr. Webb continued to meet the Plan's definition of disability.

20. At all relevant times, and prior to the denial of Mr. Webb's benefits, he was under the consistent care of his primary care physician, Dr. James Hurst ("Dr. Hurst"); his psychiatrist, Dr. Dawit Zemichael ("Dr. Zemichael"); and his orthopedist, Dr. George Baddour ("Dr. Baddour").

21. On February 1, 2018, Mr. Webb underwent arthroscopic debridement and manipulation under anesthesia of the left shoulder.

22. On June 5, 2018, Dr. Zemichael provided a Medical Source Statement to LINA which noted Mr. Webb's diagnoses of generalized anxiety disorder and

posttraumatic stress disorder. Dr. Zemichael expounded that the claimant had serious limitations in several areas, including understanding and remembering even short and simple instructions, maintaining attention, performing at a consistent pace, working with others, and completing a normal workday and workweek, and noted that his symptoms would cause him to be absent from work more than four days per month.

23.    In a Physical Medical Source Statement dated June 15, 2018, Dr. Baddour noted that Mr. Webb's rotator cuff tears, bilateral shoulder pain, and history of bilateral shoulder surgeries caused chronic pain and diminished range of motion of the upper arms and shoulders and would cause Mr. Webb to be off task 25% or more of a typical workday.

24.    Dr. Baddour completed a Medical Request Form on July 31, 2018 and noted a primary diagnosis of adhesive capsulitis of the left shoulder as well as a history of left and right shoulder pain and surgeries. Further, Dr. Baddour asserted that Mr. Webb was unable to return to work even should accommodations be made.

25.    A Medical Request Form from Dr. Hurst on August 23, 2018 also noted that Mr. Webb was incapable of returning to work with accommodations due to his posttraumatic stress disorder, panic attacks, lung nodules secondary to Beryllium exposure, and stage III chronic kidney disease.

26.     In spite of the reports from Mr. Webb's treating physicians, LINA and its paid reviewers erroneously concluded that there was not "a significant functional impairment that would preclude full time work in your regular occupation," which entailed Medium work and included the ability to exert twenty to fifty pounds of force.

27.     Neither LINA nor its paid reviewers considered Mr. Webb's non-exertional limitations, such as medication side effects, which prohibit him from holding full time employment.

28.     By and through counsel in a letter dated March 14, 2019, Mr. Webb appealed the termination of his LTD benefits. Mr. Webb included with his appeal letter a fully favorable Social Security Disability decision, as well as additional medical records outlining the decline of his condition and personal declarations from several friends and family members.

29.     On January 29, 2019, Mr. Webb was informed by the Social Security Administration that he was deemed totally disabled as of November 1, 2016 forward.

30.     The Administrative Law Judge presiding over Mr. Webb's Social Security Disability claim determined that Mr. Webb's severe impairments included major joints dysfunction, anxiety and obsessive-compulsive disorders, and trauma- and stressor-related disorders, which precluded Medium work and restricted the performance of Sedentary work. The Administrative Law Judge further concluded

that Mr. Webb experienced limitations in four areas of mental functioning, while state agency psychological consultants determined that although Mr. Webb appeared stable, he "still has severe medically determinable mental impairments."

31.    Mr. Webb was awarded Social Security Disability benefits because the Administrative Law Judge found Mr. Webb to be permanently disabled.

32.    Mr. Webb initially applied for Social Security Disability benefits as, in accordance with the Plan, LINA required Mr. Webb to apply for Social Security Disability.

33.    In support of Mr. Webb's appeal, his wife, Diana L. Webb, submitted a declaration, pursuant to 28 U.S.C. § 1746, through which she outlined the effects of Mr. Webb's disabling condition on his activities of daily living and his ability to return to work. Under penalty of perjury, Mrs. Webb noted a history of outdoor activities, travel, and social time which ceased due to Mr. Webb's deteriorating health. Mrs. Webb noted regular occurrences of severe anxiety and panic attacks which left Mr. Webb largely incapable of being in public or even leaving the house.

34.    Mr. Webb's sister, Debra Mitchell, and friends Mike Alley and Roger Eslinger provided declarations as well, pursuant to 28 U.S.C. § 1746. In these declarations, these three noted Mr. Webb's prior state to be active and social while his current state was described as one of social isolation, intense anxiety, and debilitating panic when faced with public places or restricted spaces.

35.     On May 1, 2019, by and through counsel, Mr. Webb provided updated medical records from Dr.  Hurst. These records documented treatment from November 26, 2018 to February 20, 2019 for posttraumatic stress disorder, anxiety disorder, classical migraine, and hyperlipidemia.

36.     Despite providing proof of his disability both before the termination of benefits and throughout the appeals process, LINA refused to award Mr. Webb's LTD benefits and issued a second denial letter dated May 30, 2019.

37.     In its termination letter dated May 30, 2019, LINA relied on the opinions of paid medical reviewers Dr. Michael Chen ("Dr. Chen"), Dr. Mahdy Flores ("Dr. Flores"), and Dr. Warren Taff ("Dr. Taff").

38.     Dr. Chen, whom has never seen nor treated Mr. Webb, asserted that "adequate time has elapsed since both [shoulder] surgeries for functional tissue healing and rehabilitation to permit unrestricted activity, and no complications that would prolong recovery have been documented."

39.     Dr. Chen spoke with Dr. Baddour on May 16, 2019 and was informed by this physician that Mr. Webb had limited range of motion of the bilateral shoulders and was able to push and pull five (5) pounds and to lift and carry only five (5) pounds at desk or ground level and nothing overhead.

40.     After speaking with Dr. Baddour, Dr. Chen disregarded the assigned restrictions and limitations issued by Mr. Webb's treating orthopedist and instead

stated that this treating provider's opinion was not well supported by the claim file.

41.     Although Dr. Baddour assigned restrictions and limitations which would preclude Mr. Webb from even Sedentary work activity, Dr. Chen asserted that Mr. Webb required no activity restrictions at all.

42.     Dr. Flores, whom has never seen nor treated Mr. Webb, rendered an opinion that Mr. Webb was unrestricted by his anxiety, depression, posttraumatic stress disorder, frozen shoulder, or chronic kidney disease, in spite of contradictory statements by Mr. Webb's own treating physicians.

43.     While Dr. Flores noted Mr. Webb's behavioral health progress notes to be "stable" and likened this stability to a symptom-free presentation, Mr. Webb's favorable January 29, 2019 Social Security Disability ruling recognized that "subsequent medical evidence of record establishes that the claimant is stable, but still has severe medically determinable mental impairments" and that restrictions were "supportable by and consistent with the longitudinal medical evidence of record."

44.     Although Mr. Webb expressed several times in the medical file financial constraints and insurance problems which hindered his ability to obtain treatment, Dr. Taff, whom has never seen nor treated Mr. Webb, determined that limitations secondary to generalized anxiety disorder, depression, and posttraumatic

stress disorder were unwarranted as Mr. Webb's psychiatric treatment was not of a frequency or intensity consistent with severe and unremitting psychopathy.

45.    On May 23, 2019, Dr. Taff contacted Dr. Zemichael, who reported that Mr. Webb experienced constant fearfulness, flashbacks, and panic reactions when in closed spaces or uncomfortable situations. Due to these symptoms, Dr. Zemichael recommended working from home, which was a "safe environment."

46.    Dr. Taff dismissed Dr. Zemichael's medical opinion by proclaiming that functional limitations were not entirely supported by the medical file.

47.    In upholding its denial of LTD benefits, LINA appeared to place disproportionate value on the record reviews by its paid reviewers over years of discussion and treatment with Mr. Webb by his actual treating physicians.

48.    Dr. Chen's, Dr. Flores', and Dr. Taff's opinions, as reflected in the termination letter dated May 30, 2019, failed to consider significant non-exertional and environmental restrictions, such as the side effects of his prescribed medications or the exposure to confined spaces required by Mr. Webb's regular occupation.

49.    On November 25, 2019, by and through counsel, Mr. Webb appealed the termination of his LTD benefits. Mr. Webb included with his appeal letter additional medical records which documented the deterioration of his physical and mental state.

50.     Dr. Hurst provided a statement on October 22, 2019 which noted Mr. Webb's history of anxiety, posttraumatic stress disorder, and panic attacks which "unfortunately… have occurred with frequency and duration to impact his day-to-day functioning." Dr. Hurst also noted a prior episode of heat stroke with residual headaches and reported on Mr. Webb's approval for Social Security Disability benefits based on his inability to perform a full range of Sedentary work activities, stating that "because of these findings, I wholeheartedly support his permanent disability and do not think he can any long[er] attain meaningful employment."

51.     Despite the support of his treating physicians and medical evidence showing ongoing disability before the initial termination of benefits and throughout the appeals process, LINA again denied Mr. Webb's LTD benefits and issued its final termination letter dated February 21, 2020.

52.     In its final termination letter dated February 21, 2020, LINA relied on the opinions of two paid medical reviewers board certified in psychiatry and occupational medicine.

53.     LINA's paid medical reviewer board certified in psychiatry determined that Mr. Webb did not experience psychiatric or cognitive impairment which would preclude occupational functioning, although both Mr. Webb's primary care physician and psychiatrist disagreed with this paid opinion.

54.     LINA's paid medical reviewer board certified in occupational medicine

noted that "adequate time [has elapsed] for surgical healing and functional recovery," despite Dr. Baddour's repeated assertions that Mr. Webb experienced residual chronic pain and loss of range of motion of the bilateral shoulders making him unable to carry out even Sedentary work.

55.    At the time LINA terminated Mr. Webb's LTD benefits on September 18, 2018, and throughout the appeals process, LINA had no information, from its paid reviewers' reports or otherwise, that showed Mr. Webb's medical conditions had improved, when in fact, Mr. Webb's treating physicians opined that his condition continued to deteriorate.

56.    At all relevant times of LINA's review of Mr. Webb's claim, LINA had the contractual right to obtain better evidence of Mr. Webb's disability by ordering an independent medical examination.

57.    Rather than ordering Mr. Webb to sit for an independent medical examination, LINA relied on paid record reviews to support its denial of LTD benefits that had been paid for sixteen (16) months.

58.    LINA did not allow Mr. Webb an opportunity to review and respond to its paid reviewers' reports before its final denial was issued, as Mr. Webb was only informed of their involvement and LINA's reliance upon their opinion in the letter terminating benefits dated February 21, 2020. Rather than providing Mr. Webb an

opportunity to respond, LINA informed Mr. Webb that he could bring a legal action for benefits.

59.     As of this date, Mr. Webb has met and continues to meet the Plan's definition of disabled.

60.     Mr. Webb has exhausted any applicable administrative review procedures and his claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

61.     LINA's refusal to pay benefits has caused tremendous financial hardship on Mr. Webb.

## STANDARD OF REVIEW

62.     A denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit Plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the Plan.

63.     When discretionary authority is clearly granted and the insurer of an ERISA plan also acts as a claims administrator, there is a structural or inherent conflict of interest that mandates a heightened arbitrary and capricious standard of review.

64.     Upon information and belief, the Plan does not grant discretionary authority to determine eligibility for benefits to LINA or to any other entity who may

have adjudicated Mr. Webb's claim. Therefore, the Court should review Mr. Webb's claim for benefits under a *de novo* standard.

65.     Upon information and belief, LINA evaluated and paid all claims under the LTD Plan at issue, creating an inherent conflict of interest.

66.     LINA also failed to comply with the letter of the claims procedures outlined in ERISA and therefore Mr. Webb's claim for benefits should be reviewed by this Court under a *de novo* standard.

67.     In the alternative, if the Court finds that LINA is entitled to the heightened arbitrary and capricious standard of review, the termination of Plaintiff's benefits constitutes a clear abuse of discretion as LINA's decision to deny Mr. Webb's LTD benefits was arbitrary and capricious.

## <u>DEFENDANT'S WRONGFUL AND UNREASONABLE CONDUCT</u>

68.     LINA has wrongfully denied LTD benefits to Mr. Webb, in violation of the policy provisions and ERISA, for the following reasons:

> (a) Mr. Webb is totally disabled, in that he is prevented from performing the essential duties of his regular occupation;

> (b) Mr. Webb is entitled to disability benefits under the terms of the Plan, as he meets the Plan's definition of disability and he has otherwise met the conditions precedent of the Plan for coverage and entitlement to benefits;

(c) LINA failed to accord proper weight to the evidence in the administrative record showing that Mr. Webb is totally disabled;

(d) LINA's interpretation of the definition of disability contained in the Plan is contrary to plain language of the Plan, unreasonable, arbitrary, capricious, and otherwise violated the standards required by ERISA;

(e) LINA failed to allow Mr. Webb a right to access information upon which it relied to make a final determination, and failed to allow Mr. Webb an opportunity to respond to said information, before it made a final determination on his claim for LTD benefits;

(f) LINA failed to obtain and consider relevant information pertaining to Mr. Webb's disability before it made a final determination on his claim for LTD benefits;

(g) LINA wrongfully denied Mr. Webb a full, fair and impartial review of his benefits claim pursuant to 29 C.F.R § 2560.503-1(h)(1), by ignoring the overwhelming weight of and credibility of evidence submitted and instead behaved as an adversary, looking instead for less credible evidence of marginal significance to support its goal of denying his benefits claim;

(h) LINA failed to give proper weight to Mr. Webb's own accounts regarding the debilitating effects of his pain;

17

(i) LINA ignored the records and opinions of Mr. Webb's treating physicians which show that Mr. Webb is totally disabled, and instead based its decision to deny benefits on its internal review by LINA staff members and its paid reviewers, who had never seen or treated Mr. Webb, some of which never spoke with his treating physicians about the nature of his disability, and who were not as qualified as Mr. Webb's treating physicians to formulate opinions regarding the nature and extent of his disability;

(j) LINA failed to exercise reasonable flexibility in its claims review process to assure Mr. Webb a full, fair review, well-reasoned, and principled in his claim;

(k) LINA administered Mr. Webb's claim for LTD benefits while acting under an inherent and substantial conflict of interest in that LINA served both as fiduciary of and funding source for the Plan, and placed its own pecuniary interests above Mr. Webb's interests in wrongfully terminating his LTD benefits and failing to administer the Plan as an impartial decision maker, free of such conflict of interest, would;

(l) LINA made erroneous interpretations of some evidence in violation of its obligation to discharge its duties with care, prudence, skill, and diligence;

(m)     Lina acted in bad faith by denying Mr. Webb's claim based upon the inability of LINA's paid reviewers to find Mr. Webb disabled, and otherwise failed to administer the Plan honestly, fairly and in good faith, and to at all times act in Mr. Webb's best interests;

(n) LINA terminated Mr. Webb's benefits without the support of any new information that altered in some significant way the previous decision over sixteen (16) months to pay LTD benefits to Mr. Webb;

(o) LINA terminated Mr. Webb's benefits without the support of any new information that showed improvement in Mr. Webb's medical condition, when in fact, his treating physicians opined that his condition continued to deteriorate;

(p) LINA failed to support the termination of benefits with substantial evidence;

(q) LINA imposed a standard not required by the Plan's provisions, by requiring objective evidence of Mr. Webb's subjective medical conditions where such evidence cannot be reasonably provided;

(r) LINA denied Mr. Webb's claim for a lack of objective medical evidence when Mr. Webb has provided ample subjective evidence of a disability and LINA has neither identified any objective evidence that Mr. Webb could have supplied to support the claim and has not had Mr.

Webb undergo an independent medical examination or a similar in-person probative procedure to test the validity of his complaints;

(s) LINA failed to consider Mr. Webb's non-exertional limitations caused by his disability, such as the side effects of his prescribed medication, his ability to regularly attend work, and the effect his disability has on his concentration, persistence, and pace when performing the material duties of his occupation;

(t) LINA's termination of Mr. Webb's LTD benefits failed to provide a detailed explanation and the basis of its disagreement with the opinions of Mr. Webb's treating physicians;

(u) Lina's termination of Mr. Webb's LTD benefits failed to provide a detailed explanation and the basis of its disagreement with the disability determination by the Social Security Administration;

(v) LINA failed to consider the Social Security Administration's finding of disability in its evaluation, despite its obligation to consider such evidence, and instead diminished Mr. Webb's approval for SSDI benefits while ignoring the evidence generated by the Social Security Administration in investigation of this claim;

(w) LINA wrongfully denied Mr. Webb's LTD benefits in such other ways to be shown through discovery and/or hearing.

69.     As a result of the foregoing, the relief to which Mr. Webb is entitled includes: (1) monthly LTD income benefits to Mr. Webb, (2) payment of back benefits from September 19, 2018 to the date of judgment, (3) pre-judgment interest, (4) equitable relief, including declaratory and injunctive relief, to redress LINA's practices that are violative of the Plan and ERISA, and to enforce the terms of the Plan and ERISA, and (6) an award of attorney's fees and costs pursuant to 29 U.S.C. § 1132(g).

## CAUSES OF ACTION

### COUNT ONE
### ERISA (Claim for Benefits Owed under Plan)

70.     Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

71.     At all times relevant to this action, Mr. Webb was a participant of the Plan underwritten by LINA and issued to Consolidated Nuclear Security and was eligible to receive disability benefits under the Plan.

72.     As more fully described above, the termination and refusal to pay Mr. Webb's benefits under the Plan for the period from at least on or about September 19, 2018 through the present constitutes a breach of Defendant's obligations under the Plan and ERISA. The decision to deny benefits to Mr. Webb constitutes an abuse of discretion as the decision was not reasonable and was not based on substantial evidence.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays the Court for the following:

1.     A judgment ordering the applicable standard of review in this case is *de novo*;

2.     A judgment ordering that by a preponderance of the evidence, the Defendant has breached its fiduciary duty to the Plaintiff by wrongfully denying his LTD benefits owed to him through the Plan;

3.     In the alternative, if the Court determines that the applicable standard of review is the heightened arbitrary and capricious standard, the Court may take and review the records of Defendant and any other evidence that it deems necessary to conduct an adequate arbitrary and capricious review and enter a judgment that Defendant's decision to wrongfully deny Plaintiff's LTD benefits was unreasonable, arbitrary and capricious, and unsupported by substantial evidence;

4.     Declaratory and injunctive relief, finding that Defendant violated the terms of the Plan and Plaintiff's rights thereunder by terminating Mr. Webb's LTD benefits; that Mr. Webb is entitled to a continuation of future LTD benefits from Defendant pursuant to the Plan;

5.     Declaratory and injunctive relief, finding that Defendant breached its fiduciary duties to Plaintiff; enjoining Defendant from further violations of its fiduciary duties; and directing Defendant to take all actions necessary to administer

the Plan in accordance with the terms and provisions thereof and Defendant's fiduciary and other obligations arising under ERISA;

6.     A judgment ordering Defendant to pay Mr. Webb's LTD benefits from September 19, 2018 through the date judgment is entered herein, together with pre-judgment interest on each and every such monthly payment through the date of judgment;

7.     An award of attorney's fees and costs pursuant to 29 U.S.C. § 1132(g);

8.     For such other and further relief as the Court deems just, fit and proper.

Respectfully submitted this the 3rd day of November, 2020.


                                    */s/ Peter H. Burke*_____
                                    Peter H. Burke (ASB-1992-K74P)
                                    pburke@burkeharvey.com
                                    BURKE HARVEY, LLC
                                    3535 Grandview Parkway, Suite 100
                                    Birmingham, Alabama 35243
                                    Phone: 205-930-9091
                                    Fax: 205-930-9054
                                    *Attorney for Plaintiff Felicity Jones*



**PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL AT:**

Life Insurance Company of North America
c/o CT Corporation System
2 North Jackson Street
Suite 605
Montgomery, AL  36104